MADDOX, Justice
(dissenting).
The majority correctly cites the general rule that if a jury is discharged, it cannot be reassembled to consider a verdict, but to apply that rule in this case, where the trial judge, in due time, revoked his order of discharge, fails to follow the law regarding a court’s power to revoke a discharge order.
The majority relies heavily upon this Court’s case of St. Clair v. Caldwell & Riddle, 72 Ala. 527 (1882). In St. Clair, this Court did opine:
Could the court, three days afterwards, re-assemble the jury, and have them perfect their verdict? It would be a dangerous practice, and might lead to great abuse. — Walters v. Junkins, 16 Serg. & R. 414, 16 Am.Dec. 585. No precedent for it has been produced or found. In the case of Brister v. The State, 26 Ala. 107, this court held that the jury, which amended its verdict in that case, had never in fact been discharged, or gone beyond the immediate, continuous control of the court. That case, then, is not an authority for the appellees. Waller v. The State, 40 Ala. 325, is strongly the other way. True, these were State cases; but, on the question we are considering, they tend strongly to put the Circuit Court in error in this case.
A close reading of the St. Clair case indicates that this Court was not applying a rigid rule regarding the discharge of a jury. A three-day period had elapsed before the jury was reassembled in St. Clair. In fact, in St. Clair, the Court cited Brister v. State, 26 Ala. 107 (1855), and distinguished it. Brister is much more analogous to this case. In Brister, the jury had been discharged, but the court had immediately reassembled the jury, as the court did in this case. In Brister, this Court set out the facts and its judgment as follows:
The rule of law is undoubted, that one tried for a crime has a right to be present when the jury return their verdict against him. But the reason — the only reason — of this rule is, that he may examine them by the poll, to ascertain if they assent to his conviction. The State v. Hughes, 2 Ala. 102, 36 Am.Dec. 411. When it is clear that the reason of this rule has been fully satisfied, the rule itself is satisfied. When the jury returned with their verdict in this case, and announced that they had agreed, the prisoners were not in court, but in jail. But the court, not knowing this, directed the clerk to receive and read the verdict, and the clerk did read it aloud in the presence of the court and a large number of bystanders. “The court then observed to the jury, that they were discharged, and the jury started out of the courtroom, but had not got out of the bar. It was then discovered, that the prisoners were not in court, and the court immediately stated to the jury, they were not discharged, and ordered the clerk to hand the papers in the cause back to them, and directed the sheriff to bring the Prisoners into court. When the prisoners were brought into court, they objected to the court’s receiving the verdict of the jury, on the ground that the verdict had been received by the court and read aloud in their absence, and that they had been deprived of their right to have the jury polled; but the court overruled the objection, received said ver- *990 diet, and ordered the same to be read in the presence of the said prisoners; which was done accordingly, and said prisoners excepted.”
Upon these facts, we hold that the jury were not discharged, in legal contemplation, by the occurrences which transpired in the absence of the prisoners. The observation of the court to the jury, that they were discharged, was revocable by the court for a time, and was revoked in due time. The revocation was in time, because it was almost instantaneous and whilst the jury, as a body, were still continuing to be in the bar, and in the presence and power of the court. This revocation being in time, we think the court had the power to return the papers in the cause to the jury, and to do what it then proceeded to do. Such a course of proceeding did not deprive the prisoners of the right nor the opportunity to examine the jury by the poll. There is nothing sound in the argument that the right to poll was prejudiced by the fact that the verdict had been previously read aloud in court; for the right to poll the jury cannot be exercised in any case until the verdict has been read aloud in court. 2 Hale’s P.C. 299-300.
It is obvious that the rule regarding discharge of a jury is not so rigid that it is applied blindly without regard to what is right and wrong as the majority holds, but is applied on a case-by-case basis, depending on the facts of each case, giving due regard to the established principle that a court can revoke its discharge order. The reason for the rule that a jury, once discharged, cannot be reassembled, is to prevent juror tampering and to give finality to verdicts, both laudable goals. Here, there is not the least scintilla of evidence to suggest anything occurred other than that the form of the jury verdict did not truly reflect what they actually decided upon in this case. This Court, by reversing the judgment and remanding the cause for a new trial, has destroyed the finality of the first verdict.
I respectfully feel that the Court has fallen into error by applying the discharge of the jury rule the way that it has. In the past, this Court has not been so procrustean in such matters.
For example, in Alabama Power Company v. Cleckler, 295 Ala. 73, 323 So.2d 344 (1975), the appellant made many of the same arguments which the appellant made here, viz.:
1. There was a discharge of the jury prior to the activity in court leading to the entry of judgment.
2. The judgments) of the court were based upon the second deliberation of the jury.
3. There was no acceptance by the court of the oral declaration of the jury as a verdict.
4. The court had no further authority to reassemble the jury and allow its rede-liberation upon having noted the disparity between the announcement and the written verdict.
5. The court did not attempt to correct or amend the original verdict of the jury, but apparently rejected the first finding and announcement by the jury entirely and ordered a redeliberation of the case by the jury.
The only issue presented on that appeal involved the irregularity of a jury verdict. When the jury foreman announced the verdict to the court in that case, which involved a negligence action, he stated it as “$45,000.” On the verdict form, however, the amount was shown as “$4,500.”
There, the jury had concluded its deliberations at 9:50 a. m., when the foreman read the verdict as $45,000. The jury was requested to remain in the courtroom so they could be qualified in another case. One member of that jury was excused for the remainder of the day. The trial judge discovered, within 20 minutes, the inconsistency between the verdict as read by the foreman and the verdict as written. He reassembled the jury, including the one member who had gone home, and explained the inconsistency and asked the jury to return to the jury room, and “correct your verdict.” In Alabama Power Company v. Cleckler, this Court opined:
*991 We could discuss at length, whether the oral verdict was true, whether the jury was discharged and therefore could not be reassembled, and other points regarding jury verdicts, but we consider it unnecessary to do so. It is obvious from what transpired in this case that the $4,500 sum entered on the written verdict was a clerical error.
During oral arguments of this cause, I asked appellant’s counsel if the so-called first verdict represented “the verdict that the jury actually decided upon.” Appellant’s counsel answered “No, Your Honor.”
I am of the opinion that the trial judge, the parties and their counsel, are all aware that the first verdict did not, in fact, represent the verdict that the jury agreed upon in this case. The question about the effect of the verdict was asked by one of the jurors and the juror, not appellee’s counsel, stated that the verdict did not represent their true verdict. I am quite aware of the dangers involved in reassembling a jury, and I am sensitive to the rule that courts should avoid the appearance of impropriety, but I must respectfully suggest that under the facts of this case, this opinion will more likely destroy the public’s confidence in the judicial system rather than strengthen the public’s confidence. In short, I respectfully think that justice and right have not prevailed in this case, and that is the reason for my dissent.
FAULKNER, J., concurs.